IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

MICHAEL M. BRADLEY,

**REPORT AND
RECOMMENDATION
No. 07-CV-6445(DGL)(VEB)**

                              Petitioner,

        vs.

DARWIN LaCLAIR,

                              Respondent.
_____

## I.      Introduction

        *Pro se* petitioner Michael M. Bradley ("Bradley" or "petitioner") filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his January 31, 2000 conviction

in Monroe County Court on charges of second degree (intentional) murder. The matter was

referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) to hear and dispose of all non-

dispositive motions and to issue a report and recommendation with regard to the disposition of

Bradley's petition. Presently pending before the Court are Bradley's renewed motion for a stay

and his motion to amend the petition.

## II.     Factual Background and State Court Proceedings

        The conviction here at issue stems from Bradley's involvement in the death of James

Domm ("Domm" or "the victim") in early February 1999.[1] Apparently, Bradley at the time was

staying with Domm at Domm's townhouse in the Town of Fairport, New York. On February 15,

_____

[1]        The factual background has been gleaned from the parties' briefs on direct appeal, reproduced as
Exhibit A in Respondent's Appendix of Exhibits, and the trial transcript and suppression hearing transcript pages
cited therein.

1999, two of Domm's neighbors, who had a key to his townhouse, went in to check on him. Finding the master bedroom door locked, they pried it open with a screwdriver. A large blood stain marked the bed and there were spatters of what appeared to be blood on the walls. Domm, and his car, a 1996 Pontiac Grand Am, were missing. The police were called and a missing person's alert went out nationwide on February 16, 1999.

That same night, Officer Vellotti of the Las Vegas Metropolitan Police noticed a Pontiac with New York license plates driving down State Route 163 outside of the City of Laughlin, 96 miles south of Las Vegas. Officer Vellotti said that the car was covered with so much road salt and dirt that it appeared to have been driven straight across the country from New York. After doing a license plate check, the officer learned that the owner, Domm, was missing and considered to be in possible danger. As the officer was acquiring this information, the Pontiac "veered into the left hand turn lane without signaling," "as required in Nevada prior to doing the lane change." Officer Vellotti put on his emergency lights and signaled the vehicle to a stop, about a half-mile from where he first saw it.

When asked if he was Domm, Bradley replied negatively and presented his New York driver's license. Bradley claimed to have seen Domm two days before in Las Vegas, where Domm was supposedly staying with Bradley's brother. However, Officer Vellotti related, Bradley could not provide a name or address. Although authorized to arrest Bradley for the traffic infraction, Officer Vellotti did not do so, telling Bradley that he was free to go as soon as Domm was located. This prompted Bradley to offer to find Domm on his own and have him contact the police. Perceiving Bradley to be "nervous" and "deceptive," Officer Vellotti declined the offer. Although Bradley was not under arrest at that point, Officer Vellotti placed him in

handcuffs because they were in a "desolate" area of the desert.

A few minutes later, Officer Burgess arrived and was brought up to speed on the situation. When Officer Burgess asked Officer Vellotti if he had the keys, Bradley voluntarily gestured to his front pants' pocket and said, "Here they are." Officer Burgess took them and asked Bradley twice for permission to look in the trunk, to which Bradley nodded affirmatively and said, "Uh," both times.

Upon opening the trunk, Officer Burgess found a large object, about the size and shape of a human being, covered with a blue tarp and sealed in duct tape. There was a shovel on top of the body, and next to it a steak knife as well as a cable-driven winch to which a length of knotted rope had been attached. The odor of decaying flesh was immediately obvious to both officers. As Officer Vellotti walked back to where Bradley was standing, he commented, "I believe we found Mr. Domm." At this, Bradley smiled and began to shake, commenting, "I guess the game's over."

The officers complied with Bradley's request to be placed in the patrol car, and read him his rights under *Miranda*. A third police officer, Sergeant Burgess (Officer Burgess' father), arrived about twenty minutes later and learned that the first two officers had not told Bradley why he was being arrested. The third officer asked Bradley if he knew the reason, and Bradley answered, "Murder." When asked whether the murder was of the person found in the trunk of the Pontiac, Bradley replied, "So they say."

Local homicide detectives secured a warrant for Bradley's arrest. A few hours after he was booked at the detention center in the town where he was pulled over, Bradley was transported to a jail in Las Vegas. When another inmate, Gary Daughtry, commented on the fact

that Bradley was already wearing "county blues," Bradley explained that the police had

confiscated the clothes he had been wearing after they found the dead body. Bradley expressed

surprise that Daughtry had not heard about the arrest on television. Daughtry asked, "So you

killed the guy?" Bradley responded, "Yeah." Bradley agreed with Daughtry that he probably

should not admit this to anyone else, but said to Daughtry, "[I]f push comes to shove, I will play

the crazy role." Bradley also claimed that the police would not be able to find any evidence on

his clothing.

The following morning, Bradley had another conversation with Daughtry at the jail in

which he explained how he had driven from Rochester, sleeping "on the side of the road" and

stopping at one point in Arizona.[2]  Bradley did not respond when Daughtry expressed surprise

that he did not dispose of the body somewhere along the way to Nevada. Nor did Bradley

explain why he had killed Domm; he said only that they had had a dispute about a key and that

Domm had been "after" him for something. Daughtry assumed that the victim had been

Bradley's landlord, and that the "something" was money, but Bradley "never really answered

[him] . . . ."

Bradley's pre-trial suppression hearing was denied and the case proceeded to a jury trial

in Monroe County Court (Connell, J.) on two charges of second degree murder (intentional and

depraved indifference). In addition to Bradley's confession to Daughtry, there was substantial

and compelling other evidence at trial linking him to the slaying of Domm. For instance, based

on the records from a temp agency with which he was registered, Bradley had been using

---

[2]        This was corroborated by the videotape of Bradley withdrawing cash from an ATM at a Tucson
convenience store, making a purchase at the store, and then using the ATM again.  The receipts from these
transactions, along with an ATM card issued in Domm's name, were found inside Domm's wallet on the driver's
console of the Pontiac Grand Am.

Domm's residence as his address at least five months previously. In the months before Domm's death, Bradley had obtained and lost three jobs in quick succession and was apparently in dire straits financially. He owed $950 in repairs on a station wagon he had bought for $800 lent to him by Domm.

Alicia Gross, a friend from whom Bradley regularly bought crack cocaine, provided evidence that Bradley's sporadic earning were going to drugs rather than to pay back Domm. She told of a heated argument on February 2, 1999, between Bradley and Domm about the $950-bill for the repair work. Bradley said that he had "almost" hit Domm during the altercation, causing Domm to "crap his pants."

By the next day, however, there was evidence Bradley's financial situation was markedly altered. Gross, Bradley's drug-using friend, said that he displayed a large wad of cash to her. (It looked to be about $1,000, but she had never seen him in possession of more than $100.) According to Gross, Bradley used this money to bankroll a three-day cocaine binge for himself, her, and the man she was living with. He also began cashing a series of checks to which he had forced Domm's name; the amount totaled about $1,800.

There was evidence of suspicious behavior on Bradley's part in the days immediately following February 2, 1999. For instance, Gross related that at one point on February 3rd, while Bradley, Gross, and Gross' boyfriend were at Gross' apartment, she received a phone call from another paramour. Wanting to conceal this man's existence from the man she was living with, Gross pretended that the call was from Domm. According to Gross, Bradley looked surprised and said "it couldn't be."

Although the murder weapon was never found, the forensics evidence linked Bradley to

Domm's death, which had been caused by blunt force trauma resulting in massive and fatal

blood loss. A green coat found in Domm's car, and which Bradley was seen wearing in Arizona,

was found to have blood stains on them. This blood, also found on a pair of pants and shirt

recovered from the Pontiac, did not belong to Bradley but was of a type consistent with Domm's

DNA such that the probability of a random match was less than 1 in 10,000. The blood spatters

on the jacket were consistent with "being in proximity to a blood source when it is impacted."

Specifically, Domm had sustained multiple wounds to the right side of his head, including two

major lacerations resulting in a massive skull fracture and internal hemorrhaging. Domm's ear

had nearly been severed by five or six of the wounds. There were no defensive wounds on

Domm's body. From the amount of blood pooled on the mattress and sprayed on the walls and

furniture, the medical examiner concluded that Domm had lost about a liter of blood at the time

the blunt force trauma was inflicted. He opined that such massive bleeding, without immediate

medical treatment, would leave no possibility of survival. Based on the winch found in the trunk

on the other physical evidence found in Domm's garage, it appeared that Bradley used the winch

to hoist the body into the trunk of the Pontiac.

The jury found Bradley guilty of intentional murder but not depraved indifference

murder. Bradley was sentenced to maximum term possible, 25 years to life in prison, on January

31, 2000.

Represented by new counsel, Bradley appealed his conviction to the Appellate Division,

Fourth Department, which unanimously affirmed it on April 29, 2005. *People v. Bradley*,

17 A.D.3d 1050, 794 N.Y.S.2d 201 (App. Div. 4th Dept. 2005). Leave to appeal to the New York

Court of Appeals was denied. Bradley's post-conviction applications for collateral relief in state

court similarly were unsuccessful.

### III.    Procedural History of this Habeas Proceeding

In his original petition, Bradley's main contention appeared to be that he was denied his Sixth Amendment right to have counsel present at his initial arraignment in Perinton Town Court. Bradley also discusses how he was allegedly deprived of a prompt probable cause hearing, and delves into other issues regarding the illegality of the pre-arraignment proceedings that occurred before he was extradited to New York. Although his factual allegations ranged over various topics, Bradley only appeared to denominate one ground for relief–that is, that he was denied the right to counsel at arraignment. He labeled this as "ground one"of the petition.

When respondent answered the petition, he only made two arguments in opposition–that the petition was untimely, and that the right-to-counsel claim was without merit.[3] Thus, respondent treated Bradley's petition as only raising one claim and did not address or allude to any of his other allegations.

Shortly thereafter, Bradley then filed a motion to amend and a motion to have his petition stayed while he returned to state court to exhaust his remedies with regard to certain, unidentified claims.

Respondent submitted an affidavit opposing the motion to stay and the motion to amend. Respondent generally asserted that Bradley had not fulfilled the *Rhines* criteria. Because neither Bradley's motion papers nor respondent's opposition provided enough information to decide the motion, this Court dismissed the stay motion without prejudice with leave to re-file.

---

[3]        Respondent did not raise the failure to exhaust as a defense with regard to the right-to-counsel claim, which Bradley raised in a 2005 motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10.

As directed, Bradley subsequently filed a renewed motion to stay, along with a motion to amend the petition and a proposed amended petition containing three new claims. The first was "FALSE ARREST". Amended Petition, ¶24(d)(1). This "false arrest" claim appears to be based on Bradley's claim that there was no actual violation of the traffic law, as claimed by the Nevada police officer who stopped him, and thus his arrest was in violation of the Fourth Amendment. The second proposed ground was, "No prompt probable cause determination made by neutral Nevada magistrate within 48 hours following the petitioner [sic] warrantless arrest." *Id.*, ¶24(d)(2). This claim appears to be based upon *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that a probable cause determination must be held within 48 hours of the arrest; even if held within 48 hours, it may be unconstitutional if such determination was "delayed unreasonably," such as for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake). The third proposed claim was, "No complaint filed against the petitioner by the State of Nevada pursuant to Nevada Revised Statute 171.178 subd(4), for any crime." Amended Petition, ¶24(d)(3). Parenthetically, I note that the facts Bradley sets forth in support of the proposed new claims appeared to be virtually the same facts that he raised in his original petition but failed to label as separate claims or grounds for relief.

When respondent did not submit any papers in opposition to the renewed motions to stay and amend, this Court directed respondent to do so. Respondent then submitted the same response that he submitted in response to the first stay motion. Respondent claims that Bradley does not meet the criteria set forth in *Rhines v. Weber,* 544 U.S. 266, 277 (2005), for obtaining a

stay.[4] Respondent also argues that Bradley has not fulfilled the requirements of Federal Rule of

Civil Procedure 15© for amendment of pleadings. Specifically, respondent contends that

Bradley's proposed amended claims do not "relate back" to the original petition because,

according to respondent, the original petition only asserted a claim of the denial of the right to

counsel at arraignment.

Because the question of the original petition's timeliness bears upon Bradley's

applications for a stay and to amend the petition, I must address that issue before considering the

pending motions to stay and to amend.

## II.     Timeliness of the Petition

Respondent contends that Bradley's petition is untimely because it was filed after

expiration of the relevant one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). *See*

---

[4]        In *Rhines v. Weber*, 544 U.S. 266, 277 (2005), the Supreme Court stated,

[S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
. . .

And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.
. . .

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

544 U.S. at 277-78.

Respondent's Memorandum of Law ("Resp't Mem.") at 1 *et seq.* The 1996 revisions to the federal habeas statute imposes a one-year statute of limitations for state habeas petitioners, which runs from the latest of several dates; usually, the starting date is the date the petitioner's state court conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A) - (D). Such is the case here.

Bradley's conviction was unanimously affirmed on direct appeal by the Appellate Division, Fourth Department, of New York State Supreme Court on April 29, 2005. The New York Court of Appeals denied leave to appeal on July 6, 2005. Bradley had 90 days from July 6, 2005 in which to seek a writ of *certiorari* from the United States Supreme Court; however, he elected not to do so. The Second Circuit has explained that a state-court conviction is considered "final" for purposes of AEDPA when the petitioner's 90-day period for seeking *certiorari* in the ends. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). Thus, Bradley's conviction became "final," and the one-year limitations period commenced, on Tuesday, October 4, 2005–90 days from July 6, 2005. One year from that date was October 4, 4006; however, Bradley did not file the instant habeas petition until September 12, 2007, almost a year later.

As respondent concedes, AEDPA's limitations period is tolled for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . . ." 28 U.S.C. § 2244(d)(2)." On February 11, 2005, prior to the commencement of the limitations period, Bradley had filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in the trial court (Monroe County Court). That motion was denied on March 31, 2005. Leave to appeal was denied by the Appellate Division on October 12, 2005.

Here, the C.P.L. § 440.10 motion was pending mainly before the limitations period

commenced; however, the eight (8) days between October 4, 2005, and October 12, 2005 (the date the application ceased to be "pending") does not count against petitioner.

Bradley's next state-court filing occurred two hundred sixty-nine (269) days after leave to appeal to the Appellate Division was denied, when, on July 6, 2006, Bradley filed a motion to renew in Monroe County Court pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") 2221(e).[5] The motion to renew was in regard to Bradley's previously denied 2005 C.P.L. § 440.10 motion. The County Court denied the motion to renew on November 15, 2006, holding that "defendant's motion to renew [was] not based upon new facts not offered on the prior motion which would change the prior determination of the Court, nor has the defendant demonstrated that there has been a change in the law that would require this Court to change its prior determination." *See* Resp't Ex. U.[6]   Respondent contends that Bradley's motion to renew was not a "properly filed" state-court application within the meaning of 28 U.S.C. § 2244(d)(2) because the "motion to renew . . . offered no potentially plausible basis for granting relief and because the CPL § 440.10 motion of February 2005 had previously been considered by the State court and leave to appeal was denied . . . ." Resp't Mem. at 4-5.

In *Artuz v. Bennett*, 531 U.S. 4 (2000), the Supreme Court clarified the meaning of

---

[5]     Section 2221(e) of the C.P.L.R. provides that "[a] motion for leave to renew: 1. shall be identified specifically as such; 2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and 3. shall contain reasonable justification for the failure to present such facts on the prior motion. N.Y. Civ. Prac. L. & R. 2221(e)(1) - (3). "A motion for renewal is, of course, properly made to the motion court (CPLR 2221) to draw its attention to material facts which, although extant at the time of the original motion, were not then known to the party seeking renewal and, consequently, were not placed before the court[.]" *Matter of Beiny*, 132 A.D.2d 190, 210, 522 N.Y.S.2d 511, 524 (N.Y. App. Div. 1987) (citation omitted).

[6]     Respondent's Exhibits have been submitted as an Appendix to the Answer and Memorandum of Law in Opposition to the Petition.

"properly filed" under 28 U.S.C. § 2244(d)(2) as follows:

> An application is "properly filed" when its delivery and acceptance are in
> compliance with the applicable laws and rules governing filings. These usually
> prescribe, for example, the form of the document, the time limits upon its
> delivery, the court and office in which it must be lodged, and the requisite filing
> fee. . . . [I]n common usage, the question whether an application has been
> "properly filed" is quite separate from the question whether the claims contained
> in the application are meritorious and free of procedural bar.

*Artuz*, 531 U.S. at 8-9 (footnotes omitted; emphasis in original). In this Court's opinion, the

County Court's denial of petitioner's motion to renew was *not* dismissed because it was facially

defective or failed to comply with the procedural requirements of filing a motion to renew;

rather, it was dismissed because petitioner failed to satisfy the three substantive statutory

requirements in C.P.L.R. § 2221(e) so as to entitle him to renewal. Thus, it appears that although

it was not meritorious, Bradley's motion to renew was nevertheless "in compliance with the

applicable laws and rules governing [State collateral] filings." *Artuz*, 531 U.S. at 8. Therefore,

the Court recommends concluding that Bradley's C.P.LR. § 2221(e) motion to renew was

"properly filed" and served to toll the statute of limitations under AEDPA.

As noted above, 269 days had elapsed when Bradley filed his motion to renew, which

was denied on November 15, 2006. Pursuant to C.P.L. § 460.15, Bradley then filed in the

Appellate Division a motion for leave to appeal the denial of the renewal motion. This was

denied by the Appellate Division on August 3, 2007; the appellate court found that there were no

questions or law or fact warranting review. *See* Petition, ¶23 (Docket No. 1). Bradley's motion to

renew ceased to be "pending" on August 3, 2007.

Twenty-seven days later, on August 30, 2007, Bradley signed his federal habeas petition,

which was filed and docketed by the Court Clerk on September 12, 2007. Under the prisoner

mailbox rule, *see Houston v. Lack*,  487 U.S. 266, 276 (1988), a *pro se* inmate's pleadings are deemed to be filed on the day he or she signed them and turned them over to prison officials for mailing. Thus, Bradley's habeas petition is deemed to have been filed on August 30, 2007, *not* September 12, 2007, as respondent contends.

Reviewing the relevant dates, set forth above, I have determined that while more than a year elapsed between Bradley's conviction becoming final and the filing of his habeas petition, he is entitled to periods of statutory tolling under 28 U.S.C. § 2244(d)(2). Taking into accounts the periods of statutory tolling, I have calculated that only 296 (i.e., 269 plus 27) days elapsed on the one-year limitations clock. Thus, I recommend finding that Bradley's petition was timely filed.

## III.   The Motion to Amend and the Renewed Motion to Stay

Bradley's motion to amend his habeas petition is governed by Federal Rule of Civil Procedure 15(a). *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir.2001); *see also Fama v. Commissioner of Corr. Srvs.*, 235 F.3d 804, 815 (2d Cir.2000). Where, as here, a responsive pleading has been served, leave to amend is required. Fed. R. Civ. P. 15(a). Although leave to amend shall be "freely given," Fed. R. Civ. P. 15(a), "district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Littlejohn*, 271 F.3d at 363 (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962) (listing "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment" as valid reasons for denying leave to amend)); *accord, e.g.*, *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d

Cir.1995);   *Weeks v. New York State Div. of Parole*, 273 F.3d 76, 88 (2d Cir. 2001); *Marchi v. Board of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 477-78 (2d Cir.1999) ( "Although leave to amend is usually freely granted, it may be denied within the trial court's discretion where the proposed amendment would be futile." ) (citation omitted).   A proposed amendment is futile "if the proposed claim could not withstand a motion to dismiss for failure to state a claim upon which relief may be granted." *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (stating that here there is no merit to a proposed amendment, leave to amend should be denied).

    Here, the Court finds that amendment of the petition to include the allegations set forth in the proposed amended petition would be futile for two reasons. First, as discussed further below in Section IV, all of the proposed claims are based on alleged violations of Bradley's rights under the Fourth Amendment. In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that Fourth Amendment claims are not cognizable on federal habeas review so long as the state has provided the petitioner with an opportunity for full and fair litigation of the claim. *Stone v. Powell*, 428 U.S. at 481-82; *accord Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002); *Capellan v. Riley*, 975 F.2d 67, 69-72 (2d Cir.1992). Bradley's motion to amend to add non-cognizable Fourth Amendment claims should be denied. *Accord Edwards v. Fischer*, No. 01Civ.9397(LAK)(THK), 2002 WL 31833237, at *3 (S.D.N.Y. Dec. 16, 2002 ("Because *Stone* controls here, Petitioner cannot obtain relief on his Fourth Amendment claim. It follows that it would be futile to grant Petitioner leave to amend his Petition by adding the proposed claim. Accordingly, Petitioner's motion to amend is denied.").

-14-

In addition, to the extent that Bradley's proposed three claims were raised for the first time in his December 19, 2007 "motion for a writ of error *quae coram nobis* residant [sic]," they appear to be procedurally defaulted. This is because the County Court relied exclusively upon a state procedural rule, C.P.L. § 440.10(2)©, to deny the claims when Bradley raised them in the "motion for a writ of error *quae coram nobis*." The United States Supreme Court has held that reliance by a state court upon an adequate and independent state ground to decided a constitutional claim precludes federal habeas review of that claim unless the petitioner can show cause for the default and prejudice attributable thereto, or that the petitioner is factually innocent such that a fundamental miscarriage of justice would occur should the federal court decline to hear the claim. *E.g., Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989); *accord, e.g.*, *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000).

I note that Section 440.10(2)© of the C.P.L. has been held by the Second Circuit to be an "adequate and independent" state ground. Neither cause nor prejudice is apparent on the record before me, and Bradley has not made any attempt to establish factual innocence. Thus, the proposed amended claims also would be subject to an unexcused procedural default, providing an additional reason to find that amendment would be futile. *Accord Beverly v. Walker*, 899 F. Supp. 900, 908 (N.D.N.Y. 1995) ("Because the state court made an adequate and independent finding of procedural default, and because petitioner has not made any attempt to show cause or prejudice, this Court will not review his claim.  Accordingly it would be futile to allow petitioner to amend his habeas petition.").

For essentially the same reasons, Bradley's motion to stay should be denied. With regard

to the three *Rhines* criteria applicable to petitioners seeking to invoke the stay-and-abeyance procedure, I note that Bradley has not engaged in intentionally dilatory litigation tactics; he commenced his efforts to exhaust the three proposed new claims in December 2007, only a few months after filing his habeas petition in August 2007, and very shortly after he received respondent's answer addressing only his right-to-counsel claim. However, Bradley does not explain why he did not file his motion for a "writ of error *quae coram nobis* residant [sic]" before filing his habeas petition. Reading between the lines of his pleadings, it appears that Bradley is contending that at least one of his amended claims ("false arrest") is based on newly discovered evidence. Thus, he may be implicitly arguing that this belated discovery supplies the "good cause" necessary under *Rhines*. This "newly discovered evidence" is simply an aerial zoning map that he obtained in July 2007 from the land use planning department in the Nevada county where he was arrested. That map and the related zoning information was in existence and available to him at the time of his arrest and at all times thereafter. It was in public domain and not, as he contends, "withheld", by the prosecution. With due diligence, he could have obtained the map an earlier time. Therefore, I cannot deduce "good cause" from those assertions. The absence of "good cause" for the failure to exhaust is necessary to fulfill the *Rhines* standard. *See Rhines*, 544 U.S. at 277. ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.").

With regard to the "potentially meritorious" requirement of *Rhines*, I believe that this does not weigh in Bradley's favor. As discussed more fully in the next section, Bradley's

proposed new claims derive from alleged violations of the Fourth Amendment right to be free from unreasonable searches and seizures. However, the relevant case law from the Supreme Court and Second Circuit indicates that such claims are virtually never cognizable on federal habeas review. *Rhines* instructs that "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* Because Bradley has failed to demonstrate "good cause" or that his claims are "potentially meritorious," invocation of the stay-and-abeyance procedure is not an appropriate exercise of discretion in this case.

## IV.   Analysis of Petitioner's Habeas Claims

### A.   Denial of Right to Counsel at Local/Town Court Arraignment[7]

On direct appeal, Bradley raised the claim that he was denied his right to counsel at the local/town court arraignment, under Point Seven of his appellate brief, arguing that "[w]hen appellant was returned from Nevada, he was immediately arraigned in Perinton Town Court (H-103-104)" but did not have assigned counsel present that night. As noted above, this is the one claim that respondent address when he answered the original petition. Respondent notes that while the record reveals that counsel was appointed for petitioner by Perinton Town Court, there is no indication *when* that counsel was appointed in relation to petitioner's arraignment in Perinton Town Court (Arraignment Minutes, dated March 31, 1999 p.2)." *See* Respondent's Exhibit B, at p. 73). The Fourth Department, in its memorandum unanimously affirming Petitioner's conviction, found as follows: "Contrary to the contentions of defendant, he received meaningful representation from both the Assistant Public Defender and the attorney assigned to

---

[7]   Based on this Court's review of Bradley's pleadings, it appears that this claim is listed both as Ground One and Ground Two.

replace him." *People v. Bradley*, 17 A.D.3d at 1050. Petitioner raised the same claim, that he was

denied counsel at arraignment, in a C.P.L. § 440.10 motion in Monroe County Court. *See*

Respondent's Exhibit L. C.P.L. § 440.10 relief on this claim also was denied. *See* Respondent's

Exhibit N.

Specifically, respondent indicates that the record shows the Monroe County Public

Defender was assigned to represent Bradley in Perinton Town Court. (Arraignment Minutes,

dated March 31, 1999 p.2). Respondent concedes, however, that "[t]he record is silent . . . as to

whether the Assistant Public Defender was present at Petitioner's local court arraignment or

assigned at arraignment and present thereafter." Resp't Mem. at 7. According to respondent,

even if counsel was not present for the initial arraignment held at 11 p.m. on March 15, 1999, in

Perinton Town Court, the arraignment was not a "critical stage" in the proceedings at which the

United States Constitution's Sixth Amendment mandates the presence of counsel. *Id.* (citing

*DeBerry v. Follette*, 395 F.2d 686 (2d Cir. 1968). Respondent further asserts that "[i]t is well-

settled that in criminal proceedings under New York State law, arraignment is not a "critical

stage" of the proceedings requiring the presence of counsel. *Caccio v. Fay*, 350 F.2d 214 (2d Cir.

1965).

I agree with respondent that the weight of authority in this Circuit holds that such claims

are not meritorious on federal habeas review. *Accord Holland v. Allard*, 2005 WL 2786909, at

*7 (E.D.N.Y. Oct. 26, 2005) ("Petitioner's argument that he was deprived of the right to counsel

during his June 17, 2000 arraignment is without merit as the initial arraignment was not a critical

stage in the proceedings against him which would have warranted counsel and Petitioner fails to

show that he was otherwise prejudiced.") (citing *United States ex rel. Guber v. Koson*, 273 F.

Supp. 998, 1001 (S.D.N.Y. 1967) ("Arraignment is not such a crucial juncture of the proceeding in New York.") (citing N.Y. CRIM. PROC. L. §§ 296 to 312-h); *United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, 246 n. 2 (S.D.N.Y. 1966) (same); *United States ex rel. Hussey v. Fay*, 220 F. Supp. 562, 563 (S.D.N.Y. 1963) ("Under New York law, a defendant suffers no such prejudice, for whatever counsel could have done upon arraignment on defendant's behalf, counsel were free to do thereafter. There is nothing in New York law which in any way prevents counsel's later taking advantage of every opportunity or defense which was originally available to a defendant upon his initial arraignment."). Accordingly, I recommend that this claim (i.e., "ground one" in the original petition) be dismissed. *See, e.g., Holland v. Allard*, 2005 WL 2786909, at *7.

### B.     "False Arrest"

Bradley's statement that he was subjected to a "false arrest" encapsulates his contention that he did not actually violate Nevada Revised Statute 484.343(2) (Movement and signals turning), and that therefore the police officer who stopped him did not have reasonable suspicion to do so, making his warrantless arrest in violation of the 4th, 6th, and 14th Amendments. This is essentially the same contention that was raised for the first time on direct appeal regarding Nev. R. Stat. 484.343(2). Bradley believed when he allegedly violated the Nevada Vehicle and Traffic Law, was in a business, residential district, whereas, under subsection 484.343(2) of the Nevada Revised Statutes, a driver need only signal 100 feet in advance of an intention to "turn" before changing the course of a vehicle. *See* People's Appellate Brief at 34 (Respondent's Exhibit A). The People criticized Bradley's argument for "citing nothing beyond an unattributed 'belief' that he was passing through a business or residential district . . . ." *Id.*

The Appellate Division rejected the claim, holding as follows with regard to his alleged Fourth Amendment violations:

> Contrary to the contentions in the main brief and the *pro se* supplemental brief, the court also properly refused to suppress statements and items of physical evidence obtained as the result of the stop and warrantless search of the victim's automobile, which defendant was driving. The Nevada police officer who stopped the automobile had probable cause to believe that defendant had committed a traffic violation and thus properly stopped the automobile (*see People v. Robinson*, 97 N.Y.2d 341, 348-349, 741 N.Y.S.2d 147, 767 N.E.2d 638). In addition, the officer had received information regarding the disappearance of the victim under suspicious circumstances, which justified his detention of defendant (*see People v. Oglesby*, 15 A.D.3d 888, 788 N.Y.S.2d 793). Defendant consented to the search of the trunk of the automobile (*see People v. Artis*, 201 A.D.2d 488, 489, 607 N.Y.S.2d 400) and, in any event, the contents of the trunk, including the victim's decomposing body, would inevitably have been discovered during an inventory search required by Nevada law and the relevant police departmental guidelines (*see People v. Turriago*, 90 N.Y.2d 77, 86-87, 659 N.Y.S.2d 183, 681 N.E.2d 350, *rearg. denied* 90 N.Y.2d 936, 664 N.Y.S.2d 274, 686 N.E.2d 1369).

*People v. Bradley*, 17 A.D.2d at 1050.

I see two reasons, however, why this claim does not warrant habeas relief. First, Bradley is basically challenging the legality of his arrest in terms of a Fourth Amendment violation. Fourth Amendment claims are not cognizable on habeas review under the doctrine of *Stone v Powell*, 428 U.S. 465 (1976). The Supreme Court held in *Stone v. Powell* that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. (emphasis added).

After the Supreme Court's pronouncement in *Stone v. Powell*, the Second Circuit developed a "litmus test" for determining when a petitioner was denied an "opportunity" for a "full and fair litigation of his fourth amendment claims." In *Gates v. Henderson*, 568 F.2d 830,

840 (2d Cir.1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978); *accord Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir.1992); *see also McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir.1983). The Second Circuit determined that review of Fourth Amendment claims presented by habeas petitioners would be undertaken only if (1) "the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations." *Capellan*, 975 F.2d at 69-71 (quoting *Gates*, 568 F.2d at 840 and citing *McPhail*, 707 F.2d at 70), *or* (2) "the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an 'unconscionable breakdown in the underlying process.'" *Id.* (quoting *Gates*, 568 F.2d at 840).

Here, Bradley cannot meet the first exception since New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 7 10. 10 *et seq.*, has been held by the federal courts in this Circuit to be "'facially adequate.'" *Capellan*, 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). Bradley took advantage of the opportunity to challenge the legality of his arrest, asserting the probable cause claim at the pre-trial suppression hearing, where the court made findings of fact and conclusions of law which were affirmed by the appellate court on direct appeal. Notably, however, all that must be shown is that the state has provided an *opportunity* to litigate the Fourth Amendment claim; it does not matter, for purposes of determining if there has been a full and fair opportunity for litigation, whether petitioner actually took advantage of that opportunity. *See Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (*whether or not he or she took*

-21-

*advantage of the state's procedure*), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]") (emphasis supplied).

Bradley also cannot meet the conditions of the second exception allowing habeas review of Fourth Amendment claims because he has not alleged that an "unconscionable breakdown" in the state court's corrective procedures occurred. *See Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (*per curiam*)). As the district court observed in *Cappiello v. Hoke*, "an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." 698 F. Supp. at 1050 (cited by *Capellan*, 975 F.2d at 70) *see also Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y.1987).  A habeas petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72.

Bradley now asserts that he now has concrete evidence that he was in a "business or residential district"–namely, zoning maps obtained, and correspondence received, from the department of land use planning in Las Vegas following his conviction. At bottom, however, Bradley is asserting that the state courts erroneously decided his motion to suppress, and he is requesting that this Court conduct a *de novo* factual review of his claims. The relief requested, however, is expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has

explained many times. *E.g.*, *Capellan*, 975 F.2d at 71; *Gates v. Henderson*, 568 F.2d at 840 ("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

In any event, although Bradley's argument is creative, I cannot agree with Bradley that the documentation he characterizes as "new evidence" establishes that his arrest was illegal. The crux of Bradley's contention is that he actually was in a "residential or business district" and therefore only needed to signal a turn 100 feet before doing do, whereas the police officer who stopped him stated that he believed the infraction to have been committed on what he called "county land." If a motorist in Nevada is outside of a "residential or business district," the intention to turn must be made no less than 300 feet before doing so. Thus, Bradley is essentially arguing that his traffic arrest was not only pretextual but unfounded in the law.

Bradley states that he contacted the land use planning department in Clark County, Nevada, in July 2007, and purchased a "zoning confirmation letter (ZL-0921-07), dated July 20, 2007, for parcel 264-12-499-003 which contains the left turn lane located on state route 163 right of way, located on parcel 264-12-499-003 in [L]aughlin[,] Nevada." Amended Petition, p. 8, ¶12. Bradley states that "[t]he aerial photograph zoning map along with the certified copy of County of Clark Nevada zoning code section 30.36.070" and the "zoning confirmation letter (ZL-0921-07) unequivically [sic] puts the petitioner in a residential and business district." *Id.*, p. 8, ¶13.[8] However, the Zoning Letter and the aerial photograph map do not support his claim.

---

[8]     "A signal of intention to turn right or left, or otherwise turn a vehicle from a direct course, shall be given continuously during not less than the last 100 feet traveled in a business or residential district and not less than the last 300 feet traveled in any other area prior to changing the course of a vehicle. This rule shall be observed, regardless of the weather." NEV. REV. STAT. § 484.343(2). The Nevada trooper, Officer Vellotti, testified at the suppression hearing on cross-examination, "I believe the Sate N.R.S. stipulates that in the city, it is 100 feet; and in the county, it is 300 hundred [sic] feet prior to making your lane change signaling." Transcript of Suppression

The representative stated that "the Department of Comprehensive Planning cannot verify the zoning of APN 264-12-499-003, per your request, because it is a right of way parcel. Section 30.36.070 of the Clark County Code indicates the zoning district boundary lines are construed to follow the centerline of all streets. Therefore the zoning of the parcels adjacent to the above referenced right of way are included in this letter."  The aerial map clearly indicates that to the north of state route 163's  right of way, the parcels (numbers 264-12-301-0001 and 002) are zoned as "Rural Open Land District." To the south, the parcels (numbers 264-12-401-001 and 264-12-801-006) are  zoned as a "Public Facility District."  Thus, neither the zoning letter nor the aerial zoning map indicate that there was a business or residential district on either side of the right of way where Officer Vellotti viewed the alleged traffic violation occurring–that is, petitioner turning left from state route 163 onto Thomas Edison Drive. This is neither here nor there, however. The fact remains that Bradley was provided with the *opportunity* for a full and fair litigation of his Fourth Amendment claims in the state courts, as mandated by *Stone v. Powell*. Bradley does not and cannot that there was an unconscionable breakdown in the process that the New York courts employed to address his Fourth Amendment claims. *See Breland v. Artus*, No. 05 CV 4076(ARR), 2006 WL 845474, at *9 (E.D.N.Y. Mar. 29, 2006) ("An unconscionable breakdown occurs where there is some sort of '"disruption or obstruction of a state proceeding.'" *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y.1987)). 'To establish such a breakdown,' the petitioner 'would have to prove that no state court conducted a reasoned method of inquiry into the relevant questions of fact and law

---

Hearing at 148.

concerning his Fourth Amendment claim.' *Jones v. Barkley*,  No. 99 Civ. 1344, 2004 U.S. Dist. LEXIS 3113, at *16-*17 (N.D.N.Y. Feb. 27, 2004). Petitioner does not even attempt to make such a showing. Therefore, since *Stone*  precludes federal habeas review of the petitioner's Fourth Amendment claim, the court dismisses this claim.").

Bradley's disagreement with the state courts' rulings on those claims does not, in and of itself, affect the legitimacy of the available corrective process so as to amount to an "unconscionable breakdown" in those procedures. Moreover, as noted above, the zoning map and zoning information was a matter of public record and available to Bradley at the time of his trial. Thus, he could have submitted this information to the suppression court when he litigated his Fourth Amendment claims at the trial level and on appeal.

For the foregoing reasons, I recommend finding that Bradley's claim (as set forth in the original petition and as Ground Three of the amended petition) be found to be barred from habeas review under *Stone v. Powell. E.g.*, *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir.1986) (Even where state conceded that petitioner's arrest lacked probable cause, petitioner's claim that his post-arrest questioning was fruit of the illegal arrest was barred because New York "clearly provided" petitioner with "an opportunity fully and fairly to litigate" the Fourth Amendment claim, and his failure to allege a fourth amendment claim at trial or on direct appeal bars him from doing so on habeas review.); *Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir.1980) (Petitioner's claim "that his arrest was without probable cause and that therefore the identification evidence should have been excluded, was properly rejected by the district court. [Petitioner] made no showing . . . that he had been precluded from a full and fair opportunity to litigate this issue in the state courts. Under *Stone v. Powell*  . . ., he may not urge the same

grounds for federal habeas corpus relief."). Therefore, it should be dismissed.

**C.    Failure to provide "prompt probable cause determination" and failure to file accusatory instrument promptly (Amended Petition, Ground Four)**

Bradley asserts that "[f]rom February [sic] 16, 1999 thru [sic] February [sic] 18, 1999, No.[sic] Prompt Probable cause determination was made by a neutral magistrate within 48 hours following the warrantless arrest of the petitioner. Petition at 7, ¶22. Bradley states that on February 19, 1999, he was brought before a Nevada magistrate for a "72-hour hearing, at the Justice Court of Las Vegas Township, County of Clark, State of Nevada." *Id.*  Bradley is referring to Nevada's "initial appearance" statute, Nev. Rev. Stat. 171.178(3), which provides as follows: "If an arrested person is not brought before a magistrate within 72 hours after arrest, excluding nonjudicial days, the magistrate: '(a) Shall give the prosecuting attorney an opportunity to explain the circumstances leading to the delay; and (b) May release the arrested person if he determines that the person was not brought before a magistrate without unnecessary delay.'" NEV. REV. STAT. § 171.178(3) (1991) (quoted in *Powell v. Nevada*, 511 U.S. 79 (1994)). Bradley appears to be claiming that the statute contravenes the Supreme Court's holding in *County of Riverside v. McLaughlin*, 500 U.S. at 56, regarding what constitutes a prompt determination of probable cause for Fourth Amendment purposes. Crucial to Bradley's argument is an assumption that the statute means that an arrestee is to be brought before a magistrate within 72 hours for a probable cause hearing before that magistrate. However, that is not how the Nevada Supreme Court has interpreted the statute. A brief review of *McLaughlin* is in order to provide the legal context for Bradley's claim.

In *McLaughlin*, the Supreme Court was dealing with a Fourth Amendment violation alleged in a class action brought by arrestees in the County of Riverside, California, claiming

that they did not receive a prompt probable cause determination.  The Supreme Court previously had held in *Gerstein v. Pugh*, 420 U.S. 103 (1975), that "warrantless arrests are permitted but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause." The Supreme Court in *Gerstein*, however, "[s]ignificantly stopped short of holding that jurisdictions were constitutionally compelled to provide a probable cause hearing immediately upon taking a suspect into custody and completing booking procedures," and "left it to the individual States to integrate prompt probable cause determinations into their differing systems of pretrial procedures." *McLaughlin*, 500 U.S. at 53. Implicit in this was the notion "that the Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest." *Id.* The Supreme Court in *McLaughlin* then attempted to give more precise contours to the meaning of "prompt," holding that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges." *Id.* Importantly, *Gerstein* stated that a state's failure to conduct a probable cause hearing is not sufficient in itself to void a subsequent conviction. 420 U.S. at 119.

*McLaughlin* is clearly based upon a Fourth Amendment analysis. For this reason alone, Bradley's claim is barred from habeas review under the *Stone v. Powell* doctrine, as discussed above in this Report and Recommendation.

Moreover, Bradley has not come forward with any case law, state or federal, indicating that Nev. Rev. Stat. 171.178(3) has been declared constitutionally void. Indeed, the statute has been litigated before the Nevada Supreme Court and the United States Supreme Court, and

remains on the books. However, the Nevada Supreme Court has held that the "*McLaughlin* case

renders NRS 171.178(3) unconstitutional insofar as it permits a probable cause determination

[but not an initial appearance] up to seventy-two hours after arrest and instructs that

non-judicial days be excluded from the calculation of those hours." *Powell v. State*, 113 Nev.

41, 43 n.2, 930 P.2d 1123, 1124 n. 2 (Nev. 1997)). The Nevada Supreme Court went on to state,

"Based on *McLaughlin*, we hold that a suspect must receive a probable cause determination

within forty-eight hours, *either ex parte or before the magistrate*, within forty-eight hours,

including non-judicial days." *Id.* (emphasis supplied). Bradley is essentially arguing that

Nevada, by means of Nev. Rev. Stat. § 171.178(3), permits probable cause determinations to be

delayed until 72 hours after arrest. However, the Nevada Supreme Court has explicitly

interpreted Section 171.178(3) not to stand for that proposition. Thus, Bradley's argument is

premised upon a misapprehension of Nev. Rev. Stat. § 171.178(3); the "72-hour hearing"

referred to in Nev. Rev. Stat. § 171.178(3) is not the same as a probable cause determination in

Nevada. As the Supreme Court of Nevada explained in *Powell v. State*, while a probable cause

determination must be held within 48 hours to comply with *McLaughlin*, it may be held *ex parte*

and does not need to be conducted before the magistrate. *Powell v. State*, 113 Nev. at 43 n.2.

Finally, even if Bradley had stated a *McLaughlin* violation, which I do not find to be the

case, he would not be entitled as a matter of right to have the indictment dismissed, evidence

suppressed, or the conviction overturned. *See United States v. Misioliek*, No. 03 CR 0251, 2004

WL 830433, at *2 (N.D.Ill. Apr. 16, 2004) ("Misiolek seeks to have the indictment against him

dismissed as a sanction for the McLaughlin rule violation. Misiolek does not identify any

prejudice that arose from the McLaughlin rule violation, and this Court previously found that

suppression of evidence was not an appropriate sanction because none of the evidence that

Misiolek sought to suppress was obtained pursuant to the *McLaughlin* rule violation.

Accordingly, dismissal of the indictment is not the appropriate remedy for the *McLaughlin* rule

violation. *See United States v. Fullerton*, 187 F.3d 587, 590-92 (6th Cir.1999) (finding

suppression of evidence was not the proper remedy for the *McLaughlin* rule violation); *Gerstein*

*v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (a conviction will not be

vacated on the ground that the defendant was detained pending trial without a determination of

probable cause)).

### D.   Failure to file complaint against petitioner in violation of Nevada statute

For his final ground for relief, Bradley asserts that "[n]o complaint [was] filed against

the petitioner by the State of Nevada, pursuant to Nevada Revised Statute 171.178 subd(4)."

Amended Petition at 8, ¶E(1). This statutory section provides, "When a person arrested without

a warrant is brought before a magistrate, a complaint must be filed forthwith." NEV. REV. STAT.

§ 171.178(4).  Beyond Bradley's conclusory allegation, he does not provide any other facts to

substantiate this claim. To the extent that Bradley alleges merely a violation of Nevada state

law–not federal law, he does not assert a cognizable basis for habeas relief. It is beyond debate

that federal habeas corpus relief is not available for state law errors that do not rise to the level

of federal constitutional violations. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Smith v.*

*Phillips*, 455 U.S. 209, 211 (1982) (holding that non-constitutional claims are not cognizable in

federal habeas proceedings). Most important, as with most of Bradley's previously discussed

claims, this too presents an alleged Fourth Amendment violation that is barred from federal

habeas review under *Stone v. Powell*.

## V.      Conclusion

For the foregoing reasons, I recommend finding that the original petition was timely

filed. I have considered the underlying merits of Bradley's new and original claims because it

is, in my view, judicial economy is better served in this manner. As discussed above, none of

the allegations in Bradley's original petition, amended petition, motion to amend, or motion to

stay, warrant federal habeas relief. Accordingly, I recommend that the petition be dismissed and

the pending motion to amend and motion to stay be denied.  Because he has failed to make a

substantial showing of the denial of a constitutional right, I further recommend that no

certificate of appealability should issue with respect to any of Bradley's claims. *See* 28 U.S.C. §

2253(c)(2).

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 9, 2009
Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 9, 2009
    Rochester, New York.

.